IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH HAROLD HARRINGTON, | § | |
| | § | |
| Defendant/Movant, | § | |
| | § | |
| V. | § | CIVIL ACTION  NO. H-06-3718 |
| | § | CRIMINAL ACTION NO. H-02-707 |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION
## GRANTING UNITED STATES' MOTION TO DISMISS

Before the Magistrate Judge in this proceeding under 28 U.S.C. § 2255, is the United States'
"Motion to Dismiss and Response to 28 U.S.C. § 2255" (Document No. 47), and Movant Kenneth
Harold Harrington's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence and Brief
in Support (Document Nos. 44 & 45).  Having considered the Motion to Vacate, Set Aside or
Correct Sentence and Brief in Support, the United States' Motion to Dismiss, the record of the
proceedings before the District Court in the underlying criminal case, the determinations on appeal,
and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that
the United States' Motion to Dismiss be GRANTED, that Movant Harrington's § 2255 Motion to
Vacate, Set Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED
with prejudice.

I.      **Procedural History**

Movant Kenneth Harold Harrington ("Harrington"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Harrington's first motion pursuant to § 2255.

On February 13, 2003, Harrington was charged by Superseding Information[1] with five counts of bank robbery (counts one, two, four, five and six), and one count of using and carrying a firearm during and in relation to a crime of violence (count three).  (Document No. 17).  On February 14, 2003, Harrington pled guilty to counts one, two and three, pursuant to written Plea Agreement. (Document Nos. 18 & 20).  A presentence investigation report was then prepared, to which Harrington filed one objection.  (Document No. 22).

At sentencing, which was held on May 9, 2003, Harrington's objection to Paragraph 26 of the presentence investigation report was sustained.  The District Court then calculated Harrington's sentencing guideline range on the bank robbery offenses (counts one and two) as follows: (1) Harrington's base offense level under § 2B3.1 was 20; (2) two points were added because money was taken from a financial institution; (3) two points were added to account for the multiple bank robbery offenses; (4) because Harrington accepted responsibility, his offense level was reduced by three levels, for a total adjusted offense level of 21; (5) with a total adjusted offense level of 21, and with a criminal history category of V, Harrington had a guideline sentence range of 70-87 months. As for count three, because the District Court found that Harrington had "brandished" a firearm at the bank robbery made the basis of count two (at Banco Popular), Harrington faced a mandatory minimum sentence of seven years (84 months).

---

[1] Harrington waived indictment.  (Document No. 19).

Upon consideration of the Government's Motion for Upward Departure (Document No. 25), Harrington's extensive criminal history, which was not and could not be fully considered in connection with the calculation of his criminal history category under the guidelines, the District Court departed upward on counts one and two to an adjusted offense level of 31, and a criminal history category of six.   Based on that adjusted offense level (31) and a criminal history category of 6, Harrington faced an adjusted sentencing range of 188-235 months incarceration.   The District Court sentenced Harrington to 235 months on counts one and two, to be followed by a consecutive term of 84 months on count three, with the terms of imprisonment then to be followed by a five year term of supervised release.   In justifying the upward departure and the sentence at the high end of the adjusted guideline range, the District Court stated on the record:

> I find in this matter that it appears  that since November, 1984 until now, a period of 18-and-a-half years, defendant has been out of prison only for short periods of time, about 5 months in the year of 1990, during which he violated parole, was found guilty of being a felon in possession of a firearm and carrying a weapon, in the state court, and was again in prison; and then again for several months after his release in 2001 until April or thereabouts, March or April, when he was again jailed for commission of theft.  Why parole was not revoked is unexplained in the PSR.

> But in any event, he was released again April 19th of 2002 and within the months that followed engaged in a series of armed robberies and commission of crimes, including crimes of conviction.

> It does appear that for a period of now at least 18-and-a-half years of the crimes that are being reported, and this does not count those earlier years of incarceration for other offenses that are now too old to be counted, the defendant has engaged in commission of crimes when he's out of prison.

> It further appears that, as is set forth in the presentence investigation report, that there are at least a dozen instances of armed robberies, aggravated robberies that have been committed that are not charged and are not taken into account in the establishment of these guidelines or any crimes of conviction, including other counts of aggravated robbery that are set forth in the indictment that are not taken into account otherwise, plus a series of additional robberies that were discovered through

3

the investigation; and accordingly, the Court finds that the government's motion for an upward departure should be granted.

The Court finds that the Criminal History Category is greatly understated at 5, and that moving to an offense, rather to a Criminal History Category 6 at this particular offense level of 21, still is wholly inadequate to sanction the criminal conduct which the defendant stands convicted in this case given his criminal history and the understatement of that criminal history.

And moving down the guidelines in Criminal History Category 6, progressively upward through the offense levels, the first level at which I find that the offense level and criminal history would state a term of imprisonment that would be sufficient to sanction this criminal conduct is at Offense Level 31, Criminal History Category 6, which proposes a guidelines range of from 188 months to 235 months, and I will sentence within that category.

I will state now the sentence the Court intends to impose and then will give final opportunity for any legal objections before it is finally imposed.

The Court, as stated, does find that based upon the recent, serious nature of defendant's recent uncharged conduct and his previous convictions that this upward departure is required properly to sanction the criminal culpability of this defendant.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant Kenneth Harold Harrington is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 235 months as to each of Counts 1S and 2S, followed by a consecutive term of 84 months as to Count 3S, for a total of 319 months.

Sentencing Transcript (Document No. 38) at 12-14.

Harrington, despite having waived his right to appeal in connection with his written Plea Agreement, appealed his sentence to the Fifth Circuit Court of Appeals. On March 17, 2004, the Fifth Circuit dismissed the appeal based on Harrington's waiver of his right to appeal. (Document Nos. 39 & 40). On January 24, 2005, the Supreme Court granted Harrington's petition for writ of certiorari and remanded the appeal to the Circuit for reconsideration in light of *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738 (2005). (Document No. 41). Upon such reconsideration, the

Fifth Circuit again found Harrington's challenges to his sentence, including those raised under *Booker*, to be barred by Harrington's knowing and voluntary waiver of his right to appeal. (Document No. 42).  Additionally, the Fifth Circuit held that even if Harrington had not waived his right to appeal, there was no "plain error" in his sentence.  (Document No. 42).   Harrington's subsequent petition for writ of certiorari was denied by the Supreme Court on October 3, 2005. (Document No. 43).  Harrington then, on or about November 21, 2006, filed his § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 44) and Memorandum in Support (Document No. 45).[2]  The Government has filed a Motion to Dismiss (Document No. 47), to which Harrington has filed a response in opposition (Document No. 49).  This § 2255 proceeding is ripe for ruling.

---

[2] Although the issue was not raised by the Government in its Motion to Dismiss, it appears that Harrington's § 2255 Motion to Vacate, Set Aside or Correct Sentence is time-barred. Harrington's conviction was final on October 3, 2005, when the United States Supreme Court denied his petition for writ of certiorari.  (Document No. 43).  Harrington then had one year from October 3, 2005, until October 3, 2006, to file a timely § 2255 motion.  Harrington's § 2255 motion was not filed until November 2006, over a month late. (Document No. 44).  As for the alternative commencement dates for the one year limitations period, provided for in § 2255(2), (3), and (4), none is applicable in this case.  Harrington's § 2255 motion cannot be considered timely under § 2255(2) because the record does not reveal, and Harrington does not allege, that he was in any way impeded from filing a timely § 2255 motion.  In addition, Harrington's § 2255 motion cannot be considered timely under § 2255(4) because Harrington has not shown that the facts underlying his claims could not have been discovered through the exercise of due diligence by the time his conviction was final.  Finally, Harrington's § 2255 motion cannot be considered timely under § 2255(3) because none of Harrington's claims the date is based on a right recently recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

Despite the untimeliness of Harrington's § 2255 motion, because  Harrington has not been afforded notice and an opportunity to respond to the limitations issue, *see Day v. McDonough*, 547 U.S. 198, ___, 126 S.Ct 1675, 1684 (2006) ("before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions"), the undersigned focuses herein on the Government's arguments for dismissal.

5

II.     **Claims**

Harrington raises three claims in this § 2255 proceeding:

1.      that his trial counsel was ineffective at sentencing for not challenging the information and factual basis underlying the Government's Motion for Upward Departure;

2.      that his trial counsel was ineffective for failing to challenge or object to the Government's breach of the written Plea Agreement, where the Government agreed to, and did, dismiss counts 4-6 of the Superseding Information, but then used the offenses alleged in those counts to seek an upward departure; and

3.      that his trial counsel was ineffective for failing to object to the sentence of 84 months on count three where there was no plea of guilty or factual admission that a firearm was "brandished," as opposed to carried.

The Government argues in its Motion to Dismiss that dismissal of Harrington's § 2255 Motion to Vacate, Set Aside or Correct Sentence is warranted because Harrington, as part of his written Plea Agreement, knowingly and voluntarily waived his right to collaterally challenge his conviction and sentence in a § 2255 proceeding such as this.  In the alternative, the Government argues that no relief is available to Harrington on the merits of his ineffectiveness claims.

III.    **Discussion – Waiver**

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is generally enforceable if the waiver is both knowing and voluntary.  *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *United States v. Davila,* 258 F.3d 448, 451-52 (6th Cir. 2001).   When, however, a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims survive the waiver if "the claimed assistance affected the validity of that waiver or the plea itself." *United*

*States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) (holding that "an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself"). In addition, such waivers do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005), *pet. for cert. filed* (U.S. Sept. 14, 2005) (No. 05-369).

In this case, the record shows that Harrington, as part of his written Plea Agreement, waived his right to appeal, including the manner in which his sentence was determined, and waived his right to collaterally challenge his conviction and/or sentence. The Plea Agreement provides in this respect:

> 10. Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. **The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.** The defendant may appeal <u>only</u> (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States as set forth in Title 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the sentence or conviction has become final. **The defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding.**
>
> 11. In agreeing to this waiver, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, and is **not binding** on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.

Plea Agreement (Document No. 20) at ¶ 10-11, page 5 (emphasis in original).  In addition, at his Rearraignment, after making sure that Harrington had personally read the Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement, the Court carefully questioned Harrington about the waiver provisions in the Plea Agreement:

> THE COURT:  Now, back here on Page 5 it states that you waive your right to appeal. You understand that you would [have] a right to appeal the sentence imposed or the manner in which it's determined, and you waive and give up that right, except if the sentence is above the statutory maximum or is an upward departure from the guidelines not requested by the Government.  You understand what it is you are giving up on your right to appeal the sentence to a higher court?
>
> DEFENDANT HARRINGTON:  Yes, sir.
>
> THE COURT:  And then further, you are also aware, it states of your rights, once a case is final, and if you were in prison, that you would have the right to file a petition under Title 28 U.S.C., Section 2255 to contest or collaterally attack the conviction after it has become final.
> Have you heard of a Writ of Habeas Corpus, a petition for Writ of Habeas Corpus?
>
> DEFENDANT HARRINGTON:  Yes, sir.
>
> THE COURT:  That's what usually is the type of collateral attack.  And you agree to waive your right to contest the conviction or sentence by means of any post-conviction proceeding at a later time?
>
> DEFENDANT HARRINGTON:  Yes, sir.
>
> THE COURT:  That's your agreement?
>
> DEFENDANT HARRINGTON:  Yes, sir.
>
> THE COURT:  All right.  It points out that any kind of estimate you have received about the probable sentencing range is only a prediction.  It's not a promise and it's not binding upon the Court; you understand?
>
> DEFENDANT HARRINGTON:  Yes, sir.

Rearraignment Transcript (Document No. 37) at 13-14.  Following additional admonishments, the Court determined that Harrington's guilty plea was knowing and voluntary.  *Id.* at 25.

Harrington's plea agreement waiver of his right to collaterally attack his conviction and/or sentence with a § 2255 motion is, upon this record, enforceable.  Harrington has not alleged that his Plea Agreement or the waivers contained therein were not knowing and voluntary.  In addition, Harrington has not asserted any ineffectiveness claims which have any bearing on the knowing and voluntary nature of his Plea Agreement and the waivers contained therein.  The record shows that Harrington affirmed having read the entire Plea Agreement and having discussed its contents with counsel.  In addition, Harrington affirmed that the Plea Agreement contained the entirety of his agreement with the Government and acknowledged that any sentence prediction that he had received from his counsel or the Government was a prediction, not a promise.  In addition, Harrington's sentence does not exceed the statutory maximum – that is, the maximum sentence allowed by statute, *see* 18 U.S.C. § 2113(a) (bank robbery) (statutory maximum 20 years (240 months)), does not reflect an upward departure from the Sentencing Guidelines that was not sought by the Government, and does not implicate *Booker*.  *See United States v. Bond*, 414 F.3d at 542, 545-46 (2005) (construing phrase "statutory maximum" in a plea agreement waiver to mean "'the upper limit of punishment that Congress has legislatively specified for violations of a statute'").  Finally, and most importantly, the Fifth Circuit has already held that Harrington's Plea Agreement, and the waivers contained therein, were entered into both knowingly and voluntarily. (Document Nos. 40 & 42).[3]

---

[3] In its initial dismissal of Harrington's appeal, the Fifth Circuit wrote:

This court reviews de novo whether a waiver of appeals bars an appeal. United States v. Baymon, 312 F.3d 725, 727 (5th Cir. 2002).  Harrington's sentence did not exceed the statutory maximum, and the Government had requested that the

Therefore, because Harrington's ineffectiveness claims are not related to the execution of the Plea Agreement or the knowing and voluntary nature of either Harrington's guilty plea and/or Harrington's waiver of his right to file a § 2255 proceeding, and because the Fifth Circuit has already determined that Harrington's waiver of his right to appeal is enforceable, Harrington's waiver of his right to file a § 2255 proceeding is likewise enforceable. That waiver precludes consideration of the claims Harrington raises in this § 2255 proceeding.

---

district court depart upward from the guideline range. Neither of the two exceptions to the waiver of appeal applies in this case. Harrington knowingly and voluntarily waived his right to appeal his sentence. See United States v. Portillo, 18 F.3d 290, 292-93 (5th Cir. 1994); see also United States v. Dees, 125 F.3d 261, 269 (5th Cir. 1997). Harrington's waiver of appeal is enforceable and bars the present appeal.

(Document No. 40). Then, in its Order following remand, the Fifth Circuit again found the appeal waiver enforceable:

The Supreme Court has vacated our previous judgment and remanded the case for further consideration in light of United States v. Booker, 583 U.S. ___ (2005). In the appellant's brief he did claim that the sentence above the guideline range would be forbidden by the Supreme Court when it decided Blakely v. Washington, because his waiver should be treated as allowing appeal if the guideline range was exceeded.

We reject the argument that the waiver allowed an appeal of a sentence below the statutory maximum because it exceeded the guideline range. The plea agreement expressly named the statutory maximum as what he accepted.

Having bound himself to the sentence without appeal, we would hold no plain error if we were to accord Harrington jurisdiction to appeal. However, we see the appeal as we did before: barred by the waiver.

(Document No. 42).

10

IV.     **Discussion – Merits**

Even if Harrington's Plea Agreement waiver was not enforceable, or if some of Harrington's ineffectiveness claims could be construed as falling outside of the waiver provisions, for the reasons advanced by the Government no relief is available to Harrington on the merits of his ineffectiveness claims.

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Id.* at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable.  *Id.* at 687-689.  The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief.  *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993).  In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's

11

deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense.  *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct.  *Strickland*, 466 U.S. at 690-691.  Counsel will not be judged ineffective only by hindsight.

### A.    Information Supporting Motion for Upward Departure

In his first claim, Harrington complains that his trial counsel, Harry Johnson, failed to challenge and object to the information and factual basis supporting the Government's Motion for an Upward Departure.  According to Harrington, three previous drug convictions should not have been used or considered in upwardly departing to what is career offender status under the guidelines because his simple drug possession offenses did not qualify as precursor offenses for career offender status under §§ 4B1.1 and 4B1.2 of the guidelines.  In addition, Harrington complains that trial counsel failed to challenge or object to unreliable information of his other, uncharged, armed robberies that were considered by the District Court.

When the calculation of a defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history, an upward departure is available under the guidelines.  Section 4A1.3 of the Guidelines provides as follows:

(a)    UPWARD DEPARTURES. –

(1)    STANDARD FOR UPWARD DEPARTURE. – If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

(2)    TYPES OF INFORMATION FORMING THE BASIS FOR UPWARD DEPARTURE. – The information described in subsection (a) may include information concerning the following:

(A)    Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).

(B)    Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.

(C)    Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.

(D)    Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

(E)    Prior similar adult criminal conduct not resulting in a criminal conviction.

(3)    PROHIBITION. – A prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement.

(4)    DETERMINATION OF EXTENT OF UPWARD DEPARTURE.–

(A)    IN GENERAL. – Except as provided in subdivision (B), the court shall determine the extent of a departure under this subsection by using, as a reference, the criminal history category applicable to defendants whose criminal history or

13

likelihood to recidivate most closely resembles that of the
defendant's.

(B)     UPWARD DEPARTURE FROM CATEGORY VI.– In a
case in which the court determines that the extent and nature
of the defendant's criminal history, taken together, are
sufficient to warrant an upward departure from Criminal
History Category VI, the court should structure the departure
by moving incrementally down the sentencing table to the
next higher offense level in Criminal History Category VI
until it finds a guideline range appropriate to the case.

(2003).

In its Motion for Upward Departure, the Government set out the following information and

factors that it believed warranted an upward departure: (1) Harrington's "four narcotics convictions

that were not used in the calculation of his criminal history"; (2) defendant's admission that he

committed "32 aggravated robberies which were not used in calculating his criminal history"; (3)

the fact that Harrington committed many of the aggravated robberies while on parole; and (4)

Harrington's "assaultive nature of past offenses [and] history of weapon and drug offenses".

(Document No. 25).  In the Presentence Investigation Report, the Probation Officer likewise noted

that an upward departure may be warranted:

115.   . . . As noted in Offense Behavior Not Part of Relevant Conduct, Harrington
has *admitted* and been positively identified as the suspect in three additional
bank robberies that occurred between October 15, 2002, and October 25,
2002.  This information has not been considered by the guidelines and did not
enter into the determination of the applicable guideline range.  Pursuant to
U.S.S.G. § 5K2.21, the Court can consider any uncharged conduct as a means
for upward departure.

116.   In addition, an upward departure may be warranted based upon inadequacy
of criminal history, if the Court finds the defendant's criminal history does
not adequately reflect the seriousness of the defendant's criminal history or
the likelihood he will commit future crimes, pursuant to U.S.S.G. § 4A1.3.
The defendant's criminal history started at the age of 20 and has continued

14

> for more than 26 years.  Harrington has served countless periods of incarceration and repeatedly returned to a life of crime.  Several of the defendant's prior convictions could not be used in computing his criminal history category because of the applicable time period and a majority of those offenses were committed while Harrington was under parole supervision.  He also *confessed* to nine aggravated robberies, which did not factor into his criminal history score.

Presentence Investigation Report at ¶ 115-116, at p. 21-22 (emphasis added).

At sentencing, the District Court relied on both Harrington's extensive criminal history and the twelve uncharged robberies Harrington had committed in determining that an upward departure up to offense level 31 and criminal history category 6 (carrying a sentencing range of 188-235 months), was warranted.  Harrington has made no showing that the District Court relied on any improper, invalid or unreliable information in deciding on the upward departure.  As set forth in the presentence investigation report, Harrington admitted being involved in numerous uncharged robberies.  In addition, Harrington's substantial criminal conduct, spanning most of Harrington's adult life, was not adequately reflected in the eleven criminal history points properly assigned to Harrington or the criminal history category of V that those points placed him in under the guidelines. Because there has been no showing that the upward departure was based on invalid or unreliable information, and because Harrington has made no showing that his criminal conduct, inclusive of his uncharged criminal conduct, was not akin to that of a defendant with an offense level of 31 and a criminal history category of 6, there is no reasonable likelihood that the objections Harrington believes his counsel should have made with respect to the upward departure would have yielded a different result.  Therefore, under *Strickland*, no relief is available on this ineffectiveness claim.

### B.    Alleged Breach of the Plea Agreement

In his second claim, Harrington complains that counsel failed to object to, or point out, that the Government breached the Plea Agreement by using the conduct charged in dismissed counts 4-6 to argue for an upward departure.  According to Harrington, he pled guilty with the understanding that he would not be held accountable for the conduct charged in dismissed counts 4-6.

The record reveals no breach by the Government of the Plea Agreement.  The record shows that the Government, in exchange for Harrington's guilty plea to counts one, two and three, agreed to dismiss counts four, five and six of the Superseding Information.  In accord with that agreement, the Government did move for the dismissal of counts 4-6, and that motion was granted.  In addition, while Harrington argues that the spirit of the agreement was not honored because the Government used the conduct alleged in counts 4-6 to argue for an upward departure, the provisions of the written Plea Agreement did not foreclose the Government from using or mentioning the conduct at issue in dismissed counts 4-6 at sentencing.  In fact, the Plea Agreement gave the Government full latitude to present all facts to the Court at sentencing that it deemed relevant.  The Plea Agreement specifically provided for this as follows:

12.    The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office; and

> (d)     to file a pleading relating to these issues, in accordance with U.S.S.G.
> Section 6A1.2.

Plea Agreement (Document No. 20) at ¶ 12, page 5-6.  Therefore, the Government did not breach

the Plea Agreement by urging that conduct made the basis of dismissed counts 4-6 warranted an

upward departure.  In the absence of a clear breach of the Plea Agreement, counsel was not

ineffective, within the meaning of *Strickland*, for failing to argue that there had been such a breach

by the Government.

### C.     84 month sentence under 18 U.S.C. § 924

In his final claim, Harrington maintains that his trial counsel was ineffective for failing to

object to the 84 month sentence he received on count three.  According to Harrington, in count three

he was charged with, and pled guilty to, carrying a firearm during and in relation to a crime of

violence, an offense which carried a mandatory minimum sentence of only 60 months imprisonment

under 18 U.S.C. § 924(c)(1)(A)(i).  Harrington maintains that his counsel should have objected to

the District Court's contrary determination that he "brandished" firearm, and was therefore subject

to an 84 month sentence under 18 U.S.C. § 924(c)(1)(A)(ii).

In *Harris v. United States*, 536 US 545, 568 (2002), the Supreme Court held that whether a

defendant used, carried or brandished a firearm under 18 U.S.C. § 924(c) is a sentencing factor to

be determined by the Court at sentencing.  Further, whether a defendant brandishes a firearm such

that he is subject to a mandatory minimum sentence of seven years (84 months) under § 924(c), is

a factor that "need not be alleged in the indictment, submitted to the jury, or proved beyond a

reasonable doubt."  *Harris*, 536 U.S. 568.  In the context of this case, that means that regardless of

whether Harrington admitted at his Rearraignment that he carried a firearm, the District Court was

free to find, at sentencing,  that Harrington brandished the firearm, and was therefore subject to a mandatory minimum sentence of 84 months on count three.

Given the law as announced by the Supreme Court in *Harris* as to § 924(c)'s sentencing factors, as well as the evidence that Harrington brandished or exhibited a firearm in connection with his armed robbery of Banco Popular, there was no valid objection to be made to Harrington's 84 month sentence on count three.  Consequently, counsel was not ineffective within the meaning of *Strickland*, for failing to object to the 84 month sentence.

## V.      Conclusion and Recommendation

Based on the foregoing and the conclusion that Harrington knowingly and voluntarily waived his  right to collaterally attack his conviction, and that no relief is available to Harrington on ineffectiveness his claims in any event, the Magistrate Judge

RECOMMENDS that the United States' Motion to Dismiss (Document No. 47) be GRANTED, that Movant Kenneth Harold Harrington's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 44) be DENIED, and that this § 2255 proceeding be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en

banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

 Signed at Houston, Texas, this 22nd  day of August, 2007.


Frances H. Stacy
United States Magistrate Judge

19